IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

J.S.M,[1]

     Plaintiff,

v.                                          Case No. 20-1023-JTM

ANDREW M. SAUL,
Commissioner of Social Security

     Defendant.

## MEMORANDUM AND ORDER

Plaintiff JSM applied for disability insurance benefits under the Social Security Act on February 9, 2017. The Commissioner of Social Security denied his application upon initial review on May 24, 2017, and upon reconsideration on July 19, 2017. Plaintiff sought review by an Administrative Law Judge (ALJ). Following a hearing on September 11, 2018 (Tr. 34-62), ALJ Michael Shilling determined on December 21, 2018 that plaintiff was not disabled within the meaning of the Act. (Tr. 15-25). The decision of the Commissioner became final when the Appeals Council declined plaintiff's request for review on November 26, 2019. (Tr. 1-3).

Plaintiff then filed this appeal, arguing that the ALJ erred in adopting the Residual Functional Capacity (RFC), arguing in particular that the ALJ failed to give

---

[1] The court uses initials to protect privacy interests.

due weight to the opinion of a treating physician. Although the plaintiff submitted his application for benefits based upon a number of impairments, the focus of argument in the present appeal (Tr. 9, 13) is whether the ALJ properly accounted for plaintiff's physical impairments, especially his back pain. For the reasons provided herein, the court finds that the Commissioner's decision was supported by substantial evidence contained in the record, and the decision of the Commissioner is affirmed.

Plaintiff was born in 1977, and has stated that he became disabled beginning February 20, 2016, due to a variety of conditions, including ankylosing spondylitis, fibromyalgia, chronic fatigue, depression, anxiety, panic attacks, and back problems.

Plaintiff has a high school education and two college degrees. From 2005 to 2016, plaintiff worked as a mechanical engineer for an aircraft company. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 17-24), and the briefs of the plaintiff (Dkt. 9, at  1-8) and the Commissioner. (Dkt. 12, at 2-7).

Under the Act, the court takes as conclusive the factual findings of the Commissioner so long as these are "supported by substantial evidence." 42 U.S.C. § 405(g).  The court thus looks to whether those factual findings have such support, and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if he or she suffers from "a physical or mental impairment" which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals

3

a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. In assessing a claimant's functional capacity, an ALJ must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Brownrigg v. Berryhill*, 688 Fed. Appx. 542, 546 (10th Cir. 2017) (citing SSR 16-3p, 2016 WL 1119029, at *9).

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751).  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084.  The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id.*

The court has reviewed the ALJ decision and record and concludes that the ALJ opinion was not in error. The decision was "supported by the medical evidence of record, the record as a whole, State agency findings and claimant's testimony." (Tr. 23).

The ALJ found plaintiff did not have any impairment or combination of impairments which would meet the listed severity standards of 20 CFR Part 404, Subpt. P, Appx. 1 (20 CFR § 404.1520(d), 404.15252, and 404.1526). Plaintiff retains the capacity, the ALJ determined, to do sedentary work within the meaning of 20 CFR § 404.1567(a). Specifically, the plaintiff

> can lift and or carry 10 pounds frequently and occasionally. He is able to walk or stand for 2 hours in an 8-hour workday and sit for up to 6 hours in an 8-hour workday. The claimant can occasionally climb stairs, but can never climb ropes, scaffolds or ladders. The claimant can occasionally stoop, crouch, kneel or crawl. The claimant can frequently balance. The claimant is limited to occasional overhead reaching with his right upper extremity. The claimant must avoid prolonged exposure to cold temperature extremes and vibrating machinery. The claimant is limited to simple, routine repetitive tasks with occasional interaction with co-workers and occasional interaction with the general public.

(Tr. 19).  This RFC would preclude plaintiff from returning to his former work as an engineer, but it would still allow him to perform other gainful employment, including that of clerk (DOT Job Title No. 209.587-010), document preparer (DOT No. 713.687-018), and optical assembler (DOT No. 713.687-018). (Tr. 24).

In reaching this conclusion, the ALJ discussed plaintiff's medical history. (Tr. 20-21). He also gave significant weight to state agency medical and psychological consultants, who found no more than moderate functional limitations.

The ALJ gave some weight to the results of a consultative examination which discussed primarily limitations relating to plaintiff's mental state. The ALJ found that the opinion was consistent with the plaintiff's record as a whole and with his daily activities. The ALJ also gave some weight to the statement of plaintiff's mother, indicating that plaintiff cooked, kept house, drove, shopped and cared for his own finances, though with some limitations secondary to pain.

The ALJ gave minimal weight to the February 9, 2017 statement of Dr. Timothy Shaver. Shaver stated that plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, stand for 2 hours in an 8-hour day, and sit or stand for a half hour at a time. The ALJ noted that the form was not complete and not supported by objective evidence or plaintiff's daily activities. Dr. Shaver did not identify the medical basis of, or any objective support for, the opined limitations.

 The ALJ also did not give weight to an October 9, 2017 summary supplied by Dr. Shaver which stated that "I do not see this patients is being capable of sustaining gainful employment and would consider him disabled." (Tr. 550). The ALJ appropriately found the opinion conclusory as to the ultimate issue of disability, an issue reserved for the Commissioner.

The plaintiff contends in the present appeal that the ALJ should have given greater weight to the opinion of Dr. Shaver. However, the court does not reweigh the evidence, but must determine whether the ALJ applied the correct legal standards and reached a decision supported by substantial evidence. Applying this standard, the court finds no error.

The ALJ discussed the plaintiff's medical care visits in 2016 in which he complained of ankylosing spondylitis, fibromyalgia, muscle spasms, depression, and anxiety. Plaintiff's medical records include an MRI scans from 2015 showing diffuse mild to moderate degenerative findings in his neck and low back.

On February 20, 2016, plaintiff was laid off from his employment. While the employer Textron Aviation announced the termination as a lay off reduction in force, plaintiff believes the termination was actually due to his physical condition The plaintiff obtained medical treatment in March, May, and December of 2016; examinations appeared to be within normal limits. Plaintiff reported in the first examination that he was using narcotic pain medication, but was tapering down the dosage. Indeed, he also reported that he had been able to take a plane trip to Japan for business. In March, he appeared oriented with approximate affect and demeanor, and in no obvious distress.

Plaintiff went to the Arthritis Rheumatology Clinic in February 2017, where he reported "widespread symptoms that he brought on a type-written sheet." (Tr. 488). Since his last visit, he had lost the job at Textron and gone through a separation. He reported that he had trouble sleeping because of back pain. He was taking nonsteroidal anti-inflammatory medication, having found that narcotic analgesics did not help. He was taking Lyrica to help with his fibromyalgia. His back pain was largely increased by prolonged standing. According to the clinician, plaintiff reported that "[h]e is more active than he has been in years." *Id.*

In April 2017, state agency medical consultant Dr. Gary W. Coleman, reviewed the record and concluded that plaintiff could lift, carry, push, and pull up to 20 pounds

occasionally and 10 pounds frequently; stand/walk for about six hours and sit for about six hours (with normal breaks) in an eight-hour day; frequently climb ramps/stairs; occasionally climb ladders/ropes/scaffolds; balance without limitation; and occasionally stoop, kneel, crouch, and crawl. (Tr. 73-74).

In June 2017, the plaintiff reported was "[d]oing fairly well," although he had "discomfort in the right shoulder and thumb." (Tr. 532). Plaintiff's "greatest concern" was his continuing sleep issues. *Id*. He was not taking any narcotic pain medication, which he stated did not help anyway, but "he is doing better today on his current regimen than he has on other meds in the past." *Id*. He reported that he mowed the lawn using a riding lawn mower, and that he could also fish, but not stand for very long. An examination indicated that plaintiff's gait was normal, as were most joints. He had some soft tissue discomfort, including 18 of 18 tender points. Plaintiff reported that the Lyrica was helpful with his fibromyalgia, and "states that this [the ankylosing spondylitis] is stable." (Tr. 536).

Generally, the plaintiff's physical condition remained relatively stable throughout the period immediately before and after his loss of employment. On December 15, 2017, plaintiff reported that he was "[b]etter now than before." (Tr. 552). On February 13, 2018, the plaintiff stated that "[h]e feels that his symptoms have remained stable over the past year or two." (Tr. 681). He reported that his symptoms "are mostly located in his lumbar region, bilateral shoulders, right hand and foot," as well as "some increased jaw pain that he thought was possibly a tooth." *Id.*

The court finds that substantial evidence supports the ALJ's assessment of plaintiff's functional capacity, and the ALJ had a sound basis for not giving full weight to Dr. Shaver's opinion.[2] That opinion (along with plaintiff's own claim) that the plaintiff was totally disabled and could perform no meaningful work is unsupported by the medical evidence, and is indeed at variance with the plaintiff's medical history and activities of daily living. As to plaintiff's back pain, the medical history showed a relatively stable condition, which existed while he worked as a mechanical engineer, and which did not subsequently markedly deteriorate. Plaintiff continued to complain of back pain, but also reported that he was doing better than he had been in years. As the ALJ noted, plaintiff's activities of daily living — which included driving, cooking, household chores, mowing, operating some farm machinery, using the computer, paying bills, grocery shopping, and fishing — were inconsistent with allegations of total disability.

The ALJ's decision to limit the weight given Dr. Shaver's opinion was not, as plaintiff suggests in reply (Dkt. 13, at 2) purely conclusory or lacking in foundation. Rather, the ALJ reached that decision only after discussing the medical history and the opinion of the state agency physical consultants who concluded that the plaintiff could perform sedentary work. That ability to perform sedentary work, the ALJ found, was supported by "physical examinations, objective MRI results and reported activities."

---

[2] Plaintiff also complains that the ALJ erred in noting that a page from Dr. Shaver's report was missing. See Tr. 22 (noting "[t]he form is incomplete'). But this passing comment was not an essential or material element of the ALJ's decision. The ALJ then proceeded to conclude that the opinion was "not supported by objective evidence or daily activities." *Id.* Substantial evidence, including relatively mild results from examinations in February, June and October of 2017, supports this conclusion.

(Tr. 22). Although the plaintiff's position is not entirely lacking in support, there is also substantial evidence indicating that his condition was not as limited as claimed. Where such evidentiary conflict exists, the ALJ may appropriately resolve them. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). Given the medical evidence, the plaintiff's own statements and activities of daily living, the court finds that the ALJ did not err in the determination of plaintiff's functional capacity.

IT IS SO ORDERED this day of April, 2021, that the present appeal is denied and the decision of the Commissioner is AFFIRMED.


*J. Thomas Marten*
J. Thomas Marten, Judge